


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORIX FINANCIAL SERVICES, INC., formerly known as ORIX CREDIT ALLIANCE, INC.,

Plaintiff,

-against-

JONES EQUIPMENT, INC., BONNIE L. JONES and WILLIAM L. JONES,

Defendants.

**COMPLAINT**

08 CV 1629

Plaintiff, ORIX FINANCIAL SERVICES, INC. (referred to herein as "OFS" or "plaintiff"), formerly known as ORIX CREDIT ALLIANCE, INC. (referred to herein as "OCAI"), by its attorneys Davidoff, Malito & Hutcher, LLP, complaining of the Defendants JONES EQUIPMENT, INC., BONNIE L. JONES and WILLIAM L. JONES, respectfully alleges the following:

## PARTIES, JURISDICTION AND VENUE

1. The jurisdiction of this action is based upon diversity of citizenship. 28 U.S.C. 1332. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

2. Plaintiff ORIX FINANCIAL SERVICES, INC. ("OFS" or "plaintiff"), formerly known as ORIX CREDIT ALLIANCE, INC. ("OCAI"), is a domestic corporation having its principal place of business in the town of Kennesaw, State of Georgia. Plaintiff, under the name ORIX Financial Services, Inc. and previously under the name ORIX Credit

Alliance, Inc., engages and has engaged in the business of financing the acquisition of commercial equipment throughout the United States.

3. Upon information and belief, Defendant JONES EQUIPMENT, INC. ("JONES EQUIPMENT") is a Montana corporation with a principal place of business located in the state of Montana.

4. Upon information and belief, Defendant BONNIE L. JONES is a resident and citizen of the state of Montana.

5. Upon information and belief, Defendant WILLIAM L. JONES is a resident and citizen of the state of Montana.

6. Personal jurisdiction and venue in this action is based upon the contractual agreement of the parties thereto as contained in two (2) Promissory Notes and Security Agreement-Mortgage on Goods and Chattels, dated October 23, 2000, and November 21, 2000, respectively, both executed by Defendant JONES EQUIPMENT in favor of plaintiff, and a personal and unconditional Guaranty of all of the indebtedness of JONES EQUIPMENT to OCAI, its successor and assigns, executed by each of the Defendants BONNIE L. JONES and WILLIAM L. JONES, whereby and whereunder the defendants agree to the exclusive jurisdiction and venue of any court in the state and county of New York for all actions, proceedings, claims, counterclaims or crossclaims arising directly or indirectly out of, under, in connection with or in any way related to said Promissory Notes, Security Agreement-Mortgage on Goods and Chattels and Guaranties, which are more specifically described and referred to hereinafter.

**FOR A FIRST CLAIM AGAINST DEFENDANT JONES EQUIPMENT**

7. On or about October 23, 2000, Defendant JONES EQUIPMENT executed a certain Promissory Note in the amount of $105,000.00, plus interest at the highest Prime Rate published or announced by Bank of America, N.T. & S.A., San Francisco, California, Chase Manhattan Bank or Citibank, N.A., plus 1.50%, payable to the order of plaintiff, hereinafter referred to as "Note 1", in connection with and as consideration for OCAI's financing of the acquisition by JONES EQUIPMENT of certain items of commercial equipment referred to hereinafter collectively as "Equipment 1". Equipment 1 was to be used in connection with the business activities of Defendant JONES EQUIPMENT. Pursuant to the terms of Note 1, the amount thereof was to be paid on October 12, 2001, interest on such amount payable monthly for a period of twelve (12) months, the first such payment of interest due and payable on November 12, 2000, and remaining installments of interest due and payable on the twelfth (12th) day of each successive and consecutive month thereafter until the amount of Note 1 is paid in full. A true copy of Note 1 is annexed hereto, made part hereof and marked as Exhibit "A".

8. On or about March 19, 1999, Defendant JONES EQUIPMENT, as Mortgagor, entered into and executed a certain Security Agreement – Mortgage on Goods and Chattels in which plaintiff is named as "Mortgagee," with Schedule "A", dated October 23, 2000, annexed thereto and made part thereof. Said Security Agreement – Mortgage on Goods and Chattels and Schedule "A" are hereinafter referred to jointly as the "Security Agreement". Pursuant to the terms of the Security Agreement, Defendant JONES EQUIPMENT grants to plaintiff a security interest in the items of property described in said Schedule "A" (referred to hereinafter collectively

"Equipment 1") to secure the Mortgage Obligations as defined therein, which Mortgage Obligations include without limitation all of the obligations of JONES EQUIPMENT to plaintiff under Note 1. A true copy of the Security Agreement is annexed hereto, made part hereof and marked as Exhibit "B".

9. On or about October 23, 2000, JONES EQUIPMENT executed a Delivery/Installation Certificate, Waiver and Agreement, a true copy of which is annexed hereto, made part hereof and marked as Exhibit "C", whereby said defendant acknowledges complete and satisfactory delivery of Equipment 1, free from any defenses, offsets or counterclaims, which he thereby waives as against plaintiff.

10. Defendant JONES EQUIPMENT defaulted in the installment payments due under and pursuant to the terms of Note 1 by failing to make the installment payment due on October 12, 2001, as and when said installment payment became due and payable. As a result of said default, plaintiff accelerated the outstanding balance of all amounts owed under and pursuant to the terms of Note 1.

11. Defendant JONES EQUIPMENT sold Equipment 1 with the consent of plaintiff and caused the sale proceeds generated thereby to be paid to plaintiff, the amount of all such proceeds being applied in reduction of the principal amount due under Note 1.

12. On or about December 19, 2007, plaintiff received a payment in the amount of $7,500.00 directed to be paid to plaintiff by JONES EQUIPMENT. Said payment was applied in reduction of the then existing balance due under Note 1, pursuant to said defendant's affirmation of the indebtedness due to plaintiff thereunder.

13. As of February 11, 2008, pursuant to and under the terms and conditions of Note 1, there remains due and owing to plaintiff from Defendant JONES EQUIPMENT the sum of $232,886.86, plus default interest at the rate of one-fifteenth of one percent (1/15th of 1%) *per diem* from December 20, 2007, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due and owing under and as provided for in Note 1, no part of which has been paid, although duly demanded.

## FOR A SECOND CLAIM AGAINST DEFENDANT JONES EQUIPMENT

14. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "13" with the same force and effect as if fully set forth herein.

15. On or about November 21, 2000, Defendant JONES EQUIPMENT executed a certain Promissory Note in the amount of $400,350.00, plus interest at the highest Prime Rate published or announced by Bank of America, N.T. & S.A., San Francisco, California, Chase Manhattan Bank or Citibank, N.A., plus 1.50%, payable to the order of plaintiff, hereinafter referred to as "Note 2", in connection with and as consideration for OCAI's financing of the acquisition by JONES EQUIPMENT of certain items of commercial equipment referred to hereinafter collectively as "Equipment 2". Equipment 2 was to be used in connection with the business activities of Defendant JONES EQUIPMENT. Pursuant to the terms of Note 2, the amount thereof was to be paid in four (4) consecutive and successive monthly installments of principal, the first three (3) such installments in the amount on $40,000.00 each, and the last of such principal payments in the amount of $280,350.00. The first of such installment payment

being due and payable on August 17, 2001. Interest due and payable under Note 2 is to be paid monthly, beginning on December 17, 2000, and on the same day of each consecutive and successive month thereafter for a period of twelve (12) months. A true copy of Note 2 is annexed hereto, made part hereof and marked as Exhibit “D”.

16. On or about November 20, 2000, Defendant JONES EQUIPMENT entered into and executed an additional Schedule “A” to the Security Agreement, in which is listed the items of property that consist of Equipment 2. Said Schedule “A” is hereinafter incorporated into the Security Agreement. Pursuant to the terms of the Security Agreement, Defendant JONES EQUIPMENT grants to plaintiff a security interest in the items of Equipment 2 described in said Schedule “A” (referred to hereinafter collectively “Equipment 2”) to secure the Mortgage Obligations as defined therein, which Mortgage Obligations include without limitation all of the obligations of JONES EQUIPMENT to plaintiff under Note 2. A true copy of said Exhibit “A” to the Security Agreement is annexed hereto, made part hereof and marked as Exhibit “E”.

17. Defendant JONES EQUIPMENT defaulted in the installment payment due under and pursuant to the terms of Note 2 by failing to make the installment payment due on November 17, 2001, as and when said installment payment became due and payable. As a result of said default, plaintiff accelerated the outstanding balance of all amounts owed under and pursuant to the terms of Note 2.

18. Defendant JONES EQUIPMENT sold Equipment 2 with the consent of plaintiff and caused the sale proceeds generated thereby to be paid to plaintiff, the amount of all such proceeds being applied in reduction of the principal amount due under Note 2.

19. On or about December 19, 2007, plaintiff received a payment in the amount of $7,500.00 directed to be paid to plaintiff by JONES EQUIPMENT. Said payment was applied in reduction of the then existing balance due under Note 2, pursuant to said defendant's affirmation of the indebtedness due to plaintiff thereunder.

20. As of February 11, 2008, pursuant to and under the terms and conditions of Note 2, there remains due and owing to plaintiff from Defendant JONES EQUIPMENT the sum of $237,040.41, plus default interest at the rate of one-fifteenth of one percent ($1/15^{th}$ of 1%) *per diem* from December 20, 2007, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due and owing under and as provided for in Note 2, no part of which has been paid, although duly demanded.

**FOR A THIRD CLAIM BEING A FIRST CLAIM AGAINST DEFENDANT BONNIE L. JONES**

21. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "20" with the same force and effect as if fully set forth herein.

22. On or about March 14, 1988, Defendant BONNIE L. JONES executed and delivered to Credit Alliance Corporation ("CAC")[1], OCAI's predecessor-in-interest, her personal, unconditional and continuing Guaranty of all of the indebtedness of JONES EQUIPMENT to CAC, its successors and assigns, whether such obligations were then existing or would arise or be incurred thereafter. A true copy of said defendant's Guaranty is annexed hereto, made part hereof and marked as Exhibit "F".

---

[1] On January 9, 1985, Credit Alliance Corporation merged with CAC Merger, Inc. to become CAC Merger, Inc. On January 7, 1985, First Interstate Credit Alliance, Inc. was incorporated in New York and on the same day CAC Merger, Inc. merged into it. On September 21, 1989, First Interstate Credit Alliance, Inc. changed its name to ORIX Credit Alliance, Inc.

23. On September 26, 2000, OCAI changed its name of record to ORIX Financial Services, Inc. ("OFS"), the plaintiff herein. As a consequence of said change of name, and without limitation or restriction of any kind in law or fact, OFS succeeds to all of the rights of OCAI under the Guaranty of Defendant BONNIE L. JONES referred to in the immediately preceding paragraph and to any and all documents, instruments, agreements and contracts relating thereto or executed in connection therewith, and any and all rights related or ancillary thereto.

24. Pursuant to the terms of her Guaranty of all of the obligations of JONES EQUIPMENT, Defendant BONNIE L. JONES is indebted to OFS for all amounts due and owing thereto from JONES EQUIPMENT to OFS under Note 1 in the sum of $232,886.86, plus default interest at the rate of one-fifteenth of one percent (1/15th of 1%) *per diem*, from December 20, 2007, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due and owing under and as provided for in Note 1, and under Note 2 in the sum of $237,040.41, plus default interest at the rate of one-fifteenth of one percent (1/15th of 1%) *per diem*, from December 20, 2007, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due and owing under and as provided for in Note 2, no part of which has been paid, although duly demanded.

**FOR A FOURTH CLAIM BEING A FIRST CLAIM AGAINST DEFENDANT WILLIAM L. JONES**

25. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "20" with the same force and effect as if fully set forth herein.

26. On or about November 20, 2000, Defendant WILLIAM L. JONES executed and delivered to OFS his personal, unconditional and continuing Guaranty of all of the indebtedness of JONES EQUIPMENT to OFS, whether such obligations were then existing or would arise or be incurred thereafter. A true copy of said defendant's Guaranty is annexed hereto, made part hereof and marked as Exhibit "G".

27. Pursuant to the terms of his Guaranty of all of the obligations of JONES EQUIPMENT, Defendant WILLIAM L. JONES is indebted to OFS for all amounts due and owing thereto from JONES EQUIPMENT to OFS under Note 1 in the sum of $232,886.86, plus default interest at the rate of one-fifteenth of one percent (1/15th of 1%) *per diem*, from December 20, 2007, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due and owing under and as provided for in Note 1, and under Note 2 in the sum of $237,040.41, plus default interest at the rate of one-fifteenth of one percent (1/15th of 1%) *per diem*, from December 20, 2007, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due and owing under and as provided for in Note 2, no part of which has been paid, although duly demanded.

**WHEREFORE**, plaintiff demands judgment in its favor against the Defendants as follows:

Upon the First Claim against Defendant JONES EQUIPMENT, INC. under Note 1 in the sum of $232,886.86, plus default interest at the rate of one-fifteenth of one percent (1/15th of 1%) *per diem*, from December 20, 2007, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due and owing under and as provided for in Note 1;

Upon the Second Claim against Defendant JONES EQUIPMENT, INC. under Note 2 in the sum of 237,040.41, plus default interest at the rate of one-fifteenth of one percent (1/15th of 1%) *per diem*, from December 20, 2007, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due and owing under and as provided for in Note 2;

Upon the Third Claim being a First Claim against Defendant BONNIE L. JONES under Note 1 in the sum of $232,886.86, plus default interest at the rate of one-fifteenth of one percent (1/15th of 1%) *per diem*, from December 20, 2007, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due and owing under and as provided for in Note 1, and under Note 2 in the sum of $237,040.41, plus default interest at the rate of one-fifteenth of one percent (1/15th of 1%) *per diem*, from December 20, 2007, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due and owing under and as provided for in Note 2; and

Upon the Fourth Claim being a First Claim against Defendant WILLIAM L. JONES under Note 1 in the sum of $232,886.86, plus default interest at the rate of one-fifteenth of one percent (1/15th of 1%) *per diem*, from December 20, 2007, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due and owing under and as provided for in Note 1, and under Note 2 in the sum of $237,040.41, plus default interest at the rate of one-fifteenth of one percent (1/15th of 1%) *per diem*, from December 20, 2007, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due and owing under and as provided for in Note 2;

the above amounts together with costs and disbursements of this action and such other and further relief as to this Court may seem just and proper in the premises.

Dated: New York, New York
February 14, 2008

DAVIDOFF, MALITO & HUTCHER, LLP

by______________________
Lewis M. Smoley (LS-4613)
Attorneys for Plaintiff
605 Third Avenue, 34th floor
New York, New York 10158
(212) 557-7200

Exhibit A

# PROMISSORY NOTE

$ 105,000.00 MISSOULA (City) MONTANA (State) 10-23 ,00

AFTER DATE, FOR VALUE RECEIVED, THE UNDERSIGNED - EACH OF THEM, IF MORE THAN ONE - ("Maker") PROMISE(S) TO PAY TO

THE ORDER OF ORIX FINANCIAL SERVICES, INC. F/K/A ORIX CREDIT ALLIANCE, INC.
(Name of Seller / Mortgagee / Lessor)

at any office of Orix Credit Alliance, Inc. or such other place as the Holder hereof may from time to time in writing appoint, the sum of ONE HUNDRED FIVE THOUSAND AND 00/100

DOLLARS ($ 105,000.00 ) payable in consecutive monthly installments as follows:

11 installment(s), each in the amount of $ 0.00 ; then 1 installment(s), each in the amount of $ 105,000.00 ;
then ____ installment(s), each in the amount of $ ____ ; then ____ installment(s), each in the amount of $ ____ ;
then ____ installment(s), each in the amount of $ ____ ; then ____ installment(s), each in the amount of $ ____ ;
then ____ installment(s), each in the amount of $ ____ ; then ____ installment(s), each in the amount of $ ____ ;
then ____ installment(s), each in the amount of $ ____ ; then ____ installment(s), each in the amount of $ ____ ;
then ____ installment(s), each in the amount of $ ____ ; then ____ installment(s), each in the amount of $ ____ ;
then ____ installment(s), each in the amount of $ ____ ; then ____ installment(s), each in the amount of $ ____ ;
then ____ installment(s), each in the amount of $ ____ ; then ____ installment(s), each in the amount of $ ____ ;

said consecutive monthly installments shall commence on the 12 day of NOVEMBER , 2000 , and continue on the same date of each month thereafter until paid; with interest from the date hereof being payable on the unpaid amount at the maturity of each installment, until maturity at a rate equal to the sum of ONE . FIFTY percent ( 1.50 %) per annum plus the highest "Prime Rate" published or announced by Bank of America, N.T. & S.A., San Francisco, CA., Chase Manhattan Bank, or Citibank, N.A., both of New York, New York (whichever of the three shall be highest), at any time during the (30) days immediately prior to the due date of the monthly installment or monthly interest payment, and after maturity of each installment or the maturity of this Promissory Note or acceleration of the indebtedness evidenced hereby, at a rate of interest equal to 1/15th of 1% per day, until this Promissory Note is paid in full, and if placed in the hands of an attorney for collection, a reasonable sum (equal to 20% of the unpaid amount) as attorneys' fees. If any interest rate provided for herein shall be found to exceed the maximum permitted by applicable law, such rate shall be reduced to such maximum. In the event any of the above-named banks no longer publishes or announces a rate called "prime rate", there shall be substituted for such bank's "prime rate" the higher of such other comparable index or reference rate as may be quoted by such bank or a rate equal to 185% of the Federal Discount rate then in effect at the Federal Reserve Bank of New York. Upon non-payment of any installment or interest when due, all remaining unpaid indebtedness shall, at the option of the Holder and without notice or demand, become immediately due and payable together with accrued or chargeable interest, late charges, collection charges and attorneys' fees. **THE MAKER AND ANY GUARANTOR OR ENDORSER OF THIS PROMISSORY NOTE HEREBY WAIVE PRESENTMENT FOR PAYMENT, DEMAND, PROTEST, NOTICE OF PROTEST AND NOTICE OF DISHONOR HEREOF, AND FURTHER HEREBY WAIVE ALL BENEFIT OF VALUATION, APPRAISEMENT AND EXEMPTION LAWS AND DO HEREBY DESIGNATE AND APPOINT EDWIN M. BAUM ESQ., AND C-A CREDIT CORP., BOTH OF NEW YORK, OR EITHER OF THEM, AS EACH OF SAID PARTIES TRUE AND LAWFUL ATTORNEY-IN-FACT AND AGENT FOR EACH OF SAID PARTIES AND IN EACH OF SAID PARTIES NAME, PLACE AND STEAD TO ACCEPT SERVICE OF ANY PROCESS WITHIN THE STATE OF NEW YORK, HOLDER AGREEING TO NOTIFY EACH OF SAID PARTIES, AT THE LAST ADDRESS KNOWN TO HOLDER FOR EACH, BY CERTIFIED MAIL, WITHIN THREE DAYS OF SUCH SERVICE HAVING BEEN EFFECTED. EACH OF SAID PARTIES AGREE TO THE EXCLUSIVE VENUE AND JURISDICTION OF ANY COURT IN THE STATE AND COUNTY OF NEW YORK REGARDING ANY MATTER ARISING HEREUNDER WITH THE SOLE EXCEPTIONS THAT AN ACTION TO RECOVER POSSESSION OF ANY ASSETS OF THE MAKER OR ANY GUARANTOR OR ENDORSER, HOWEVER DENOMINATED, MAY, IN THE SOLE DISCRETION OF HOLDER, BE BROUGHT IN A STATE OR FEDERAL COURT HAVING JURISDICTION OVER SUCH ASSETS, AND THAT JUDGMENTS MAY BE CONFESSED, ENTERED, OR ENFORCED IN ANY JURISDICTION WHERE THE MAKER OR ANY GUARANTOR OR ENDORSER OR SUCH ASSETS MAY BE LOCATED. THE MAKER AND ANY GUARANTOR OR ENDORSER FURTHER WAIVE ANY RIGHT THEY, OR ANY OF THEM, MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT IN ACCORDANCE HEREWITH.** The Maker and any Guarantor or Endorser further agree that the validity, enforceability and effectiveness of each provision hereof and the obligations, rights and remedies of each of them in any way relating to or arising under this Promissory Note shall be governed and construed in accordance with the laws of the State of New York (excluding its choice of law rules). Maker and any Guarantor or Endorser hereby irrevocably authorize any attorney of any court of record to appear for and confess judgment against such Maker, Guarantor or Endorser (except in any jurisdiction where such action is not permitted by law) for all sums due hereunder to Holder, including expenses and 20% added for attorneys' fees, without stay of execution. The Holder may extend the time of payment of this Promissory Note, postpone the enforcement hereof, grant any other indulgence and add or release any party primarily or secondarily liable hereon without affecting or diminishing the Holder's right of recourse against the Maker or any Guarantor or Endorser of this Promissory Note, which right is hereby expressly reserved.

Co-Maker ____________________ JONES EQUIPMENT, INC. (SEAL)

____________________ X By: William L Jones
(Witness for Maker and Co-Maker) (Authorized Signature)

**Exhibit B**

# SECURITY AGREEMENT-MORTGAGE ON GOODS AND CHATTELS

**THIS MORTGAGE** made the 19 day of MARCH, 1999 by and between

JONES EQUIPMENT, INC.
(Name of Mortgagor)

8155 OLD HWY 10 WEST MISSOULA MONTANA 59802
(Address of Mortgagor)

"Mortgagor", and ORIX CREDIT ALLIANCE, INC 10220 SW GREENBURG RD., STE. 125 PORTLAND, OR 97223 "Mortgagee";

[ If Mortgagee named above is not ORIX Credit Alliance, Inc., Mortgagor acknowledges notice of the intended assignment hereof to ORIX Credit Alliance, Inc. (said assignee hereinafter called "Mortgagee") and upon such assignment, Mortgagor agrees not to assert against Mortgagee any defense, set-off, recoupment, claim or counterclaim which Mortgagor may have against the Mortgagee named above and any assignee hereof prior to Mortgagee, whether arising hereunder or otherwise. ]

**WITNESSETH:**

1. To secure the prompt payment, with interest thereon, performance and fulfillment of any and all Mortgage Obligations (as hereinafter defined) of Mortgagor to Mortgagee, which is hereby confessed and acknowledged, Mortgagor hereby grants, assigns, transfers, bargains, conveys, confirms, pledges, mortgages and grants to Mortgagee a security interest in all and singular, the goods, chattels and property described in the annexed Schedule A and any and all documents, instruments, chattel paper, goods, general intangibles, inventory, machinery, contract rights, equipment, fixtures, accounts, insurance and all other property and assets of every kind and nature in which Mortgagor now or hereafter has any right or interest (all of the foregoing, together with all accessions, attachments, replacements, substitutions and accessories thereto now or hereafter belonging to Mortgagor, wherever located; and all proceeds, and any distribution thereof and any insurance thereon, products and rents therefrom collectively called "Collateral"), to have and to hold the same unto Mortgagee forever; provided, however, that if Mortgagor shall fully, timely and faithfully pay, perform and fulfill the Mortgage Obligations, time being of the essence hereof, then this Mortgage shall be void, but otherwise shall remain in full force and effect. Mortgagor grants Mortgagee a security interest in the Collateral to secure the Mortgage Obligations.

2. The term "Mortgage Obligations" as used herein shall mean and include any and all loans, advances, payments, extensions of credit, endorsements, guaranties, benefits and financial accommodations heretofore and/or hereafter made, granted or extended by Mortgagee or which Mortgagee has or will become obligated to make, grant or extend to or for the account of Mortgagor, and any and all interest, commissions, obligations, liabilities, indebtedness, charges and expenses heretofore and/or hereafter chargeable against Mortgagor by Mortgagee or owing by Mortgagor to Mortgagee or upon which Mortgagor may be and/or has become liable as endorser or guarantor, and any and all renewals or extensions of any of the foregoing, no matter how or when arising and whether under any present or future agreement or instrument between Mortgagor and Mortgagee or otherwise, including, without limitation, any and all obligations and/or indebtedness of any and every kind arising out of one or more conditional sale contracts, equipment lease agreements, notes, security agreements, trust receipts and/or bailment agreements and the amount due upon any notes or other obligations, given to or received by Mortgagee directly from Mortgagor or by way of assignment from any one or more third parties and whether or not presently contemplated by the parties, and for or on account of any of the foregoing, and the prompt performance and fulfillment by Mortgagor of all of the terms, conditions, promises, covenants, provisions and warranties contained in this Mortgage and in any note or notes secured hereby and in any present or future agreement or instrument between Mortgagor and Mortgagee.

3. Mortgagor covenants and warrants to Mortgagee and agrees that the Collateral described in the annexed Schedule A is in the possession of Mortgagor at its principal place of business (which is Mortgagor's address shown above), unless a different location is specifically shown on Schedule A for any one or more items, that all of the Mortgage Obligations are acknowledged and declared to be secured by this Mortgage and that Mortgagor will fully and faithfully pay, perform and fulfill all of the Mortgage Obligations, with interest thereon from and after maturity of any unpaid installment of the Mortgage Obligations, whether by acceleration or otherwise, at the rate of 1/15th of 1% per day (the "Past Due Rate") until the Mortgage Obligations are collected by the Mortgagee in full, provided, however, that in no event shall either any late charge or the Past Due Rate under any Mortgage Obligation or hereunder exceed any maximum permitted by law. If all or any portion of the Mortgage Obligations be referred to an attorney for collection, there shall also be due a reasonable sum (equal to 20% of the unpaid amount of such Mortgage Obligations) as attorneys' fees. If for any reason any interest rate, late charge, fee or other charge imposed or which may be imposed under any Mortgage Obligation exceeds the maximum amount which may be imposed under applicable law, the amount of such interest rate, late charge, fee or other charge in excess of the maximum shall be void and any such excess collected by Holder shall be applied to the reduction of such Mortgage Obligation or, to the extent permitted by applicable law, to such other obligations of the Mortgagor at the time owing to Holder as Holder may determine, and any remaining excess shall be refunded to Mortgagor. Mortgagor further covenants and agrees with and warrants to Mortgagee that:

(a) Mortgagor is the lawful owner of the Collateral and represents and warrants to Mortgagee that Mortgagor has paid all applicable sales, use or other taxes due in connection with the sale, purchase, ownership, possession or use of the Collateral and shall indemnify Mortgagee from and against any loss, cost or expense, including penalties, interest and other charges of any kind in connection with or arising from the sale, purchase, ownership, possession or use of the Collateral, and has the sole right and lawful authority to make this Mortgage; the Collateral and every part thereof is free and clear of all liens and encumbrances of every kind, nature and description (except any held by Mortgagee); and Mortgagor will warrant and defend the Collateral against all claims and demands of all persons and will not permit any circumstances to exist under which the Mortgagee may lose its lien on the Collateral.

(b) Mortgagor will keep the Collateral free and clear of all attachments, levies, taxes, liens and encumbrances of every kind; Mortgagor, at its own cost and expense, will maintain and keep the Collateral in good repair, will not waste nor abuse nor destroy the same or any part thereof and will not be negligent in the care and use thereof; and Mortgagor will not sell, assign, mortgage, lease, pledge or otherwise dispose of the Collateral without the prior written consent of Mortgagee. Mortgagee is hereby authorized to file one or more financing statements and/or a reproduction hereof as a financing statement. Mortgagor hereby irrevocably appoints Mortgagee as the true and lawful Attorney-in-Fact of Mortgagor, coupled with an interest, with full power in Mortgagor's name, place and stead to execute financing statements on Mortgagor's behalf and to do any and all other acts on Mortgagor's behalf necessary or helpful to perfect Mortgagee's security interest in the Collateral pursuant to the Uniform Commercial Code or other applicable law.

(c) Mortgagor will insure the Collateral in the name of the Mortgagee against loss or damage by fire and extended coverage perils, theft, burglary, pilferage, collision and also, where requested by Mortgagee, against other hazards, with companies, in amounts and under policies (each containing a standard breach of warranty clause) acceptable to Mortgagee, the proceeds to be payable to Mortgagee, and all premiums thereon shall be paid by Mortgagor and the policies assigned and delivered to Mortgagee. Mortgagee shall have the right, but not the obligation, to provide insurance for its interest and charge Mortgagor Mortgagee's cost for such insurance, together with it or its designee's customary charges or fees associated with its insurance. Mortgagor hereby irrevocably appoints Mortgagee as Mortgagor's Attorney-in-Fact to make claim for, receive payment of and execute and endorse all documents, checks or drafts received in payment for any loss or damage under any of said insurance policies and to execute any documents or statements referred to herein.

(d) Mortgagor will not remove the Collateral from within the 48 contiguous States of the United States or its present locations without the prior written consent of Mortgagee nor change its present business locations without at least thirty days prior written notice to Mortgagee and at all times will allow Mortgagee or its representatives free access to and right of inspection of the Collateral, which shall remain personalty and not become a part of any realty, and nothing shall prevent Mortgagee from removing same or so much thereof as Mortgagee, in its sole discretion may determine, from any premises to which it may be attached and/or upon which it may be located upon breach of this Mortgage; Mortgagor agreeing to deliver to Mortgagee appropriate waivers, satisfactory to Mortgagee, of owners and of mortgagees of any such premises.

(e) Mortgagor shall comply (so far as may be necessary to protect the Collateral and the lien of this Mortgage thereon) with all of the terms and conditions of leases covering the premises wherein the Collateral may be located and with any orders, ordinances, laws or statutes of any city, state or other entity having jurisdiction over the premises or the conduct of business thereon, and, where requested by Mortgagee, will correct any defects or execute any written instruments and do any other acts necessary to more fully effectuate the purposes and provisions of this instrument.

(f) Mortgagor will indemnify and save Mortgagee harmless from all losses, costs, damages, liabilities or expenses, including reasonable attorneys' fees, that Mortgagee may sustain or incur to obtain or enforce payment, performance or fulfillment of any of the Mortgage Obligations or in the enforcement or foreclosure of this Mortgage or in the prosecution or defense of any action or proceeding either against Mortgagor or against Mortgagee concerning any matter growing out of or connected with this Mortgage and/or any of the Mortgage Obligations and/or any of the Collateral.

(g) If Mortgagor is a corporation, the execution of this Mortgage has been duly consented to and authorized by all of the stockholders of Mortgagor and duly authorized by its Board of Directors. Mortgagor agrees to deliver to Mortgagee evidence thereof satisfactory to Mortgagee immediately upon request.

4. If Mortgagor shall default in the full, prompt and faithful performance of any of the terms, conditions and provisions of this Mortgage, Mortgagee may, at its option, without waiving its right to enforce this Mortgage according to its terms, immediately or at any time thereafter, and without notice to or demand upon Mortgagor, perform or cause the performance of such, for the account and at the sole cost and expense of Mortgagor, which (including reasonable attorneys' fees) shall be a lien on the Collateral, added to the amount of the Mortgage Obligations, without notice to Mortgagor, and shall be payable on demand with interest at the Past Due Rate. This Mortgage may be assigned along with any and all Mortgage Obligations, without notice to Mortgagor, and upon such assignment Mortgagor agrees not to assert against any assignee hereof any defense, set-off, recoupment, claim, counterclaim or cross-claim which Mortgagor may have against Mortgagee, whether arising hereunder or otherwise, and such assignee shall be entitled to at least the same rights as Mortgagee. **MORTGAGOR AND MORTGAGEE HEREBY DESIGNATE AND APPOINT EDWIN M. BAUM, ESQ. AND C-A CREDIT CORP., BOTH OF NEW YORK, OR EITHER OF THEM AS THEIR TRUE AND LAWFUL ATTORNEY-IN FACT AND AGENT FOR THEM AND IN THEIR NAME, PLACE AND STEAD TO ACCEPT SERVICE OF ANY PROCESS WITHIN THE STATE OF NEW YORK, THE PARTY CAUSING SUCH PROCESS TO BE SERVED AGREEING TO NOTIFY THE OTHER PARTY(IES) AT THEIR ADDRESS AS SHOWN, OR THEIR LAST KNOWN ADDRESS, BY CERTIFIED MAIL, WITHIN THREE (3) DAYS OF SUCH SERVICE HAVING BEEN EFFECTED. MORTGAGOR AND MORTGAGEE HEREOF AGREE TO THE EXCLUSIVE VENUE AND JURISDICTION OF ANY COURT IN THE STATE AND COUNTY OF NEW YORK FOR ALL ACTIONS, PROCEEDINGS, CLAIMS, COUNTERCLAIMS OR CROSSCLAIMS ARISING DIRECTLY OR INDIRECTLY OUT OF, UNDER, IN CONNECTION WITH, OR IN ANY WAY RELATED TO THIS MORTGAGE WHETHER BASED IN CONTRACT OR IN TORT, OR AT LAW OR IN EQUITY OR PURSUANT TO STATUTE, WITH THE SOLE EXCEPTIONS THAT AN ACTION TO OBTAIN, REMOVE POSSESSION OF ALL OR PART OF THE COLLATERAL AND EQUITABLE PROCEEDINGS TO ENFORCE THE TERMS OF THIS MORTGAGE MAY, IN THE SOLE DISCRETION OF MORTGAGEE, BE BROUGHT IN A STATE OR FEDERAL COURT HAVING JURISDICTION OVER THE COLLATERAL, AND/OR THE MORTGAGOR, AS THE CASE MAY BE, AND THAT JUDGMENTS MAY BE CONFESSED, ENTERED, OR ENFORCED IN ANY JURISDICTION WHERE THE MORTGAGOR OR THE COLLATERAL AND/OR ANY OTHER ASSETS OF THE MORTGAGOR MAY BE LOCATED. MORTGAGOR AND MORTGAGEE EACH WAIVE ANY RIGHT THEY OR ANY OF THEM MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT IN ACCORDANCE HEREWITH.** At Mortgagee's request Mortgagor will furnish current financial statements satisfactory to Mortgagee in form, preparation and content.

5. If Mortgagor shall default in the prompt payment, performance or fulfillment of any of the Mortgage Obligations, or if Mortgagor shall cease doing business, or become insolvent, or make an assignment for the benefit of creditors, or if proceedings under any Bankruptcy Act or for the appointment of a receiver, trustee, liquidator or custodian for Mortgagor or any of Mortgagor's property shall be commenced by or against Mortgagor, or if Mortgagor shall fail to punctually and faithfully fulfill, observe or perform any of the terms, conditions, promises, covenants, provisions and warranties contained in this Mortgage or in any present or future agreement or instrument made by Mortgagor and then held by Mortgagee, or if any of the warranties, covenants or representations made to Mortgagee be or become untrue or incorrect in any adverse respect, or if there shall be a change in the management, operations, ownership of stock or control of Mortgagor, or if Mortgagee at any time shall deem the Collateral in danger of misuse, concealment, mis-appropriation or seizure or if Mortgagor shall determine that the prospect of payment or performance of the Mortgage obligations is impaired, then in any such event the indebtedness under all Mortgage Obligations shall at once, at the option of Mortgagee, and to the extent permitted by applicable law, become immediately due and payable without notice to Mortgagor, and in such event it shall be lawful for Mortgagee to take possession of the Collateral, at any time, wherever it may be, and to enter any premises without causing a breach of peace with or without process of law, and search for, take possession of, remove, or keep and store the Collateral on said premises until sold, without liability for trespass nor charge for storage, and to sell the Collateral or any part thereof and all of Mortgagor's equity of redemption therein at public or private sale, for cash or on credit, and on such terms as Mortgagee may in its sole discretion elect, in such county and at such places as Mortgagee may elect and without having the Collateral at the place of sale; Mortgagee may bid or become the purchaser at any such sale and Mortgagor waives any and all rights of redemption from any such sale. Any public sale will be deemed commercially reasonable if notice thereof shall be mailed to Mortgagor at least 10 days before such sale and advertised in at least one newspaper of general circulation in the area of the sale at least twice prior to the date of sale and if upon terms of 25% cash down with the balance payable within 24 hours; and any private sale shall be deemed commercially reasonable if notice thereof shall be mailed to Mortgagor at least 14 days before the sale date stated therein and credit given for the full price stated, less reasonable attorneys' fees. In light of Mortgagor's obligations to maintain the Collateral, Mortgagee shall not be required to refurbish, repair or otherwise incur any expenses in preparing Collateral for sale but may sell its interest therein on an "as-is", "where-is" basis. The proceeds of any public sale shall be applied first to pay all costs, expenses and charges for pursuing searching, taking, removing, keeping, advertising and selling the Collateral, including reasonable attorneys' fees (deemed to be 20% of the unpaid Mortgage Obligations) and second to the payment, partly or entirely, of any of the Mortgage Obligations as Mortgagee may in its sole discretion elect, returning the overplus, if any, to Mortgagor, who shall remain liable to Mortgagee for any deficiency plus interest thereon at the Past Due Rate. Mortgagor hereby irrevocably consents to the appointment of a receiver for the Collateral and/or all other property of Mortgagor, and of the rents, issues and profits thereof. Such receivership may continue until such deficiency is satisfied in full. Mortgagor expressly waives any right to notice or hearing in any action to recover

possession of any or all of the Collateral. In any action in the nature of replevin or sequestration, Mortgagor agrees that if it contests such action it will post a bond written by a national insurance company authorized to execute such bonds in the jurisdiction of such proceedings, such bond to be no less than the value of the subject matter of such replevin or the unpaid balance then owing to Mortgagee, whichever be less. Mortgagor hereby irrevocably authorizes any attorney of any court of record to appear for and confess one or more judgments against Mortgagor (except in any jurisdiction where such action is not permitted by law) for all amounts owing under the Mortgage Obligations, any other monies due hereunder, plus reasonable attorneys' fees and any deficiency, without stay of execution, and waive the issue of process, all right of appeal and relief from any and all appraisement, stay or exemption laws then in force. Any notices relating hereto shall be in writing and effective when delivered in person to an officer of the party to whom addressed or mailed by certified mail to such party at its address specified herein or at such other address as may hereafter be specified by like notice by either party to the other. Reasonable notification hereunder shall be any notification given or sent at least five (5) days prior to the event for which such notification is sent. **TO THE MAXIMUM EXTENT PERMITTED BY LAW, MORTGAGOR AND MORTGAGEE EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES (A) ANY AND ALL RIGHT TO A TRIAL BY JURY OF ANY AND ALL CLAIMS, DEFENSES, COUNTERCLAIMS, CROSSCLAIMS AND SET-OFF OR RECOUPMENT CLAIMS ARISING EITHER DIRECTLY OR INDIRECTLY OUT OF, UNDER, IN CONNECTION WITH, OR IN ANY WAY RELATED TO THE MORTGAGE OBLIGATIONS AND WHETHER BASED IN CONTRACT OR IN TORT OR PURSUANT TO STATUTE AND (B) ANY AND ALL RIGHT TO CLAIM OR RECOVER ANY PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES.**

6. Mortgagee may at any time, with or without exercising any of the rights or remedies aforesaid and without prior notice or demand to Mortgagor, appropriate and apply toward the payment of the Mortgage Obligations any and all balances, sums, property, credits, deposits, accounts, reserves, collections, drafts, notes or checks coming into Mortgagee's possession and belonging or owing to Mortgagor, and for such purposes, endorse the name of Mortgagor on any such instrument made payable to Mortgagor for deposit, negotiation, discount or collection. Such applications may be made, or any monies paid to Mortgagee may be applied, without notice to Mortgagor, partly or entirely to such of the Mortgage Obligations as Mortgagee in its sole discretion may elect. In its sole discretion Mortgagee may apply and/or change applications of any sums paid and/or to be paid by or for Mortgagor, under any circumstances, to any obligations of Mortgagor to Mortgagee, presently existing or otherwise. The interest rates which may be provided for in any instrument evidencing one or more Mortgage Obligations shall in no event, circumstance or contingency, exceed any maximum permitted by applicable law.

7. If, after default by Mortgagor under the Mortgage Obligations, Mortgagee fails to demand full payment, performance or fulfillment or otherwise proceed, such failure shall not be deemed a waiver of the right of Mortgagee subsequently to make demand for immediate payment, performance and fulfillment of the Mortgage Obligations, or to take immediate possession of the Collateral, or to foreclose this Mortgage at any time or to proceed otherwise; and the acceptance by Mortgagee of any payment subsequent to such default shall not be deemed a waiver of any of Mortgagee's rights. No delay or failure on the part of Mortgagee in exercising any right, privilege, remedy or option hereunder shall operate as a waiver of such or of any other right, privilege, remedy or option, and no waiver whatever shall be valid unless in writing, signed by an officer of Mortgagee and then only to the extent therein set forth. This Mortgage cannot be changed or terminated orally. The books and records of Mortgagee containing entries with respect to the Mortgage Obligations shall be admissible in evidence in any action or proceeding, shall be binding upon the Mortgagor for the purpose of establishing the items therein set forth and shall constitute prima facie proof thereof. Mortgagee shall have the right to enforce any one or more remedies available to it successively, alternately or concurrently. Only a writing, signed by an officer of Mortgagee, shall be effective, but only to the extent therein specifically set forth, to change, modify or terminate any Mortgage Obligation, this Mortgage or any other agreement between Mortgagor and Mortgagee.

8. All of the rights, remedies, options, privileges and elections given to the original Mortgagee hereunder shall enure to the benefit of Mortgagee, any transferee or holder of this Mortgage, and their respective successors and assigns; and all the terms conditions, promises, covenants, provisions and warranties of this Mortgage shall enure to the benefit of and shall bind the representatives, successors and assigns of the respective parties. Any and all security interests granted to Mortgagee shall attach to any and all proceeds and products. Each person signing this Mortgage warrants full authority to sign for the party named and said person, individually, together with the party named, shall be jointly and severally liable for the unpaid balance of the Mortgage Obligations in the event of the breach of the above provisions and/or in the event Mortgagor fails to pay its obligations in full to Mortgagee immediately upon the sale, transfer, assignment or conversion of any of the Collateral and agrees that upon the request of Mortgagee, after any default, to segregate and hold all or any part of the Collateral in a fiduciary capacity and to adequately maintain, service and insure said property and to protect same from use and/or abuse, all without charge to Mortgagee, such fiduciary duty to terminate only upon the actual delivery of the Collateral to Mortgagee. Mortgagor, recognizing that in the event of default no remedy at law would provide adequate relief to Mortgagee, agrees that Mortgagee shall be entitled to temporary and permanent injunctive relief without the necessity of proving actual damages.

9. Some of the Collateral may be in the hands of Mortgagor under one or more security agreements which are or may be held by Mortgagee and with respect to such Collateral, this Mortgage is only of any equity that Mortgagor may now or in the future have in such Collateral and Mortgagee by accepting this Mortgage shall not in any manner be considered as having waived any security interest arising independently of this Mortgage nor shall this Mortgage be construed as adversely affecting any rights of Mortgagee under any other security agreement nor as a waiver of any of the terms and provisions of any other security agreement, guaranty or endorsement, all of which shall remain and continue in full force and effect.

10. Intending that each and every provision of this Mortgage be fully effective and enforceable according to its terms, the parties agree that the validity, enforceability and effectiveness of each provision hereof and the obligations, rights and remedies of the Mortgagor and Mortgagee in any way related to or arising under this Mortgage or under one or more Mortgage Obligation shall be governed by and construed in accordance with the laws of the State of New York (excluding its choice of law rules). If any one or more provisions hereof are in conflict with any statute or law and thus not valid or enforceable, then each such provision shall be deemed null and void but only to the extent of such conflict and without invalidating or affecting the remaining provisions hereof. This contract shall be binding upon the heirs, administrators, legal representatives and successors of the Mortgagor.

**11. MORTGAGOR DOES HEREBY WAIVE, FOREGO AND AGREE NOT TO ASSERT ANY AND ALL RIGHTS, CLAIMS AND DEFENSES, IF ANY, UNDER THE FEDERAL FAIR CREDIT REPORTING ACT AND/OR UNDER ANY COMPARABLE STATE LAWS THAT MAY INURE TO THE BENEFIT OF MORTGAGOR IN CONNECTION WITH THIS MORTGAGE. MORTGAGOR HEREBY RATIFIES AND APPROVES THE OBTAINING BY MORTGAGEE OF ANY CREDIT REPORT RELATING TO MORTGAGOR AND HEREBY AGREES THAT MORTGAGEE MAY HEREAFTER OBTAIN SUCH CREDIT REPORTS AS MORTGAGEE IN ITS SOLE DISCRETION MAY DETERMINE.**

IN WITNESS WHEREOF, Mortgagor has caused these presents to be duly executed, the day and year first above written.

JONES EQUIPMENT, INC. (Seal)
(Mortgagor)

ATTEST/WITNESS : ______________________ By William L. Jones Pres. (Title)
(Secretary/Witness)

STATE OF
COUNTY OF } S.S.

______________________ being duly sworn, deposes and says:

1. He is the ______________ of ______________ (hereinafter called "Mortgagor") described in and which executed the foregoing Mortgage.

2. Mortgagor is the sole owner and in possession of the goods, chattels and property mentioned and described in the foregoing Mortgage. Said goods, chattels and property are free of all liens and encumbrances of any kind, nature and description (except for any held by the Mortgagee referred to below), and Mortgagor has the sole right and lawful authority to mortgage the same.

3. Mortgagor is solvent and justly indebted to the mortgagee named in the foregoing Mortgage (hereinafter called "Mortgagee") in the amount of the aggregate sum of the Mortgage Obligations outstanding on the date hereof, and there are no claims, offsets or defenses against same.

4. There are no judgments against Mortgagor, and no attachment or execution is now outstanding against any of Mortgagor's property, no receiver of Mortgagor has ever been appointed or applied for. There are no proceedings in bankruptcy pending affecting Mortgagor, nor have there ever been any such proceedings affecting Mortgagor, and no assignment for the benefit of creditors has been made by Mortgagor.

5. Deponent makes this affidavit realizing that Mortgagee is being induced thereby to extend credit to and/or accept Mortgagor as a credit risk in reliance upon the truth of the statements contained herein, and this affidavit is made to induce Mortgagee to do so.

Sworn to before me this ______ day of ______________ , ______

______________________ (Signature)
NOTARY PUBLIC
(Notarial Seal)

State of ______________, County of ______________, SS:

I, ______________________, a Notary Public duly qualified in and for said County and state, do hereby certify that on this ______ day of ______________, ______ in (Place) ______________________ in said County, before me personally appeared ______________________ to me personally well known to be the identical person who signed the within and foregoing instrument of writing in his own proper handwriting and well known to me to be and who acknowledged himself to be the ______________ of ______________________, who, being by me first duly sworn, did say that he is such officer of the aforesaid corporation, named in the within, foregoing and annexed instrument of writing, and being authorized so to do, executed said foregoing instrument; that he was duly authorized to execute said instrument for and in the name of said corporation and make this acknowledgment; that he knows the contents of said instrument; that he resides at ______________________ that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that the said instrument was signed, sealed and delivered on behalf of said corporation by authority of its Board of Directors, and said affiant acknowledged that he executed said instrument as his free, true and lawful act and deed and the free, true, lawful and corporate act and deed of said corporation, in pursuance of said authority by him in his said capacity and by said corporation voluntarily executed for the uses, purposes and consideration therein mentioned and contained, by signing the name of the corporation by himself as such officer.

Given under and witness my hand and offical seal the day and year in this certificate first above written.

(Notarial Seal)

______________________
NOTARY PUBLIC

# SCHEDULE "A"

**This schedule is attached to and becomes part of Promissory Note with Security Agreement, or Security Agreement, Conditional Sale Contract, Lease, or ______________ dated MARCH 19, 1999 between the undersigned.**

| QUANTITY | DESCRIPTION OF PROPERTY (Indicate Whether "NEW"or"USED") | Year & Model | Serial No. |
|---|---|---|---|
| 1 | KETO SINGLE GRIP HARVESTER | 150 | 211/94 |
| 1 | KOBELCO HYDRAULIC CARRIER | SK120LCIII | YP02104 |
| 1 | TIMBERJACK FELLER BUNCHER | ~~2518~~ 2518 | ~~096047~~ CI9133 |
| ~~1~~ | ~~HARVESTING HEAD~~ | ~~7822~~ | ~~1251~~ |
| 1 | CATERPILLAR WHEEL SKIDDER | 518 | 094U01287 |
| | COMPLETE WITH ALL ATTACHMENTS AND ACCESSORIES. | | |

**This schedule is hereby verified correct and undersigned Mortgagor(s), Buyer(s), Maker(s) or Lessee(s) acknowledges receipt of a copy this** 23 **day of** Oct , 00 .

**Mortgagee/Seller/Lessor/Holder:**

ORIX FINANCIAL SERVICES, INC. F/K/A
ORIX CREDIT ALLIANCE, INC.

**By:** ______________________________

**Mortgagor/Buyer/Lessee/Maker:**

JONES EQUIPMENT, INC.

X **By:** William L Jones

SCHED.A(1-98) NET 9.01

**Exhibit C**

**DELIVERY/INSTALLATION CERTIFICATE, WAIVER AND AGREEMENT**

8155 OLD HWY. 10 WEST MISSOULA MONTANA 59802 10-23-00
(Equipment Location) (Street) (City) (State) (Zip) (Date)

To: ORIX FINANCIAL SERVICES, INC. F/K/A ORIX CREDIT ALLIANCE, INC.
(Seller/Lessor/Mortgagee)

199 S. LOS ROBLES AVE., STE. 200 PASADENA CALIFORNIA 91101
(No.) (Street) (City) (State)

We hereby acknowledge complete and satisfactory delivery / installation of the property described in the agreement between us dated 10-23-00 and notice of your intention to sell such agreement and our note(s) to ORIX Credit Alliance, Inc. In order to induce ORIX Credit Alliance, Inc. to purchase such agreement and note(s) we represent to it that the same are free from any defenses, offsets or counterclaims and we hereby waive any claim or offset as against ORIX Credit Alliance, Inc. and recognize its right to enforce such agreement and note(s) according to their terms free from any defenses, offsets or counterclaims.

JONES EQUIPMENT, INC.
(Buyer/Lessee/Mortgagor)

8155 OLD HWY. 10 WEST MISSOULA MONTANA 59802
(Address)

X By: William L. Jones
(Owner/Partner or Officer)

D/I/S(1-98) NET 9.01

**Exhibit D**

# PROMISSORY NOTE

$ 400,350.00 MISSOULA (City) MONTANA (State) 11-21-00 ,

AFTER DATE, FOR VALUE RECEIVED, THE UNDERSIGNED - EACH OF THEM, IF MORE THAN ONE - ("Maker") PROMISE(S) TO PAY TO THE ORDER OF ORIX FINANCIAL SERVICES, INC. F/K/A ORIX CREDIT ALLIANCE, INC. (Name of Seller / Mortgagee / Lessor)

at any office of Orix Credit Alliance, Inc. or such other place as the Holder hereof may from time to time in writing appoint, the sum of FOUR HUNDRED THOUSAND THREE HUNDRED FIFTY AND 00/100

DOLLARS ($ 400,350.00 ) payable in consecutive monthly installments as follows:

2 installment(s), each in the amount of $ 0.00 ; then 1 installment(s), each in the amount of $ 40,000.00 ;
then 2 installment(s), each in the amount of $ 0.00 ; then 1 installment(s), each in the amount of $ 40,000.00 ;
then 2 installment(s), each in the amount of $ 0.00 ; then 1 installment(s), each in the amount of $ 40,000.00 ;
then 2 installment(s), each in the amount of $ 0.00 ; then 1 installment(s), each in the amount of $ 280,350.00 ;
then ____ installment(s), each in the amount of $ ____ ; then ____ installment(s), each in the amount of $ ____ ;
then ____ installment(s), each in the amount of $ ____ ; then ____ installment(s), each in the amount of $ ____ ;
then ____ installment(s), each in the amount of $ ____ ; then ____ installment(s), each in the amount of $ ____ ;
then ____ installment(s), each in the amount of $ ____ ; then ____ installment(s), each in the amount of $ ____ ;

said consecutive monthly installments shall commence on the 17 day of DECEMBER , 2000 , and continue on the same date of each month thereafter until paid; with interest from the date hereof being payable on the unpaid amount at the maturity of each installment, until maturity at a rate equal to the sum of ONE . FIFTY percent ( 1.50 %) per annum plus the highest "Prime Rate" published or announced by Bank of America, N.T. & S.A., San Francisco, CA., Chase Manhattan Bank, or Citibank, N.A., both of New York, New York (whichever of the three shall be highest), at any time during the (30) days immediately prior to the due date of the monthly installment or monthly interest payment, and after maturity of each installment or the maturity of this Promissory Note or acceleration of the indebtedness evidenced hereby, at a rate of interest equal to 1/15th of 1% per day, until this Promissory Note is paid in full, and if placed in the hands of an attorney for collection, a reasonable sum (equal to 20% of the unpaid amount) as attorneys' fees. If any interest rate provided for herein shall be found to exceed the maximum permitted by applicable law, such rate shall be reduced to such maximum. In the event any of the above-named banks no longer publishes or announces a rate called "prime rate", there shall be substituted for such bank's "prime rate" the higher of such other comparable index or reference rate as may be quoted by such bank or a rate equal to 185% of the Federal Discount rate then in effect at the Federal Reserve Bank of New York. Upon non-payment of any installment or interest when due, all remaining unpaid indebtedness shall, at the option of the Holder and without notice or demand, become immediately due and payable together with accrued or chargeable interest, late charges, collection charges and attorneys' fees. **THE MAKER AND ANY GUARANTOR OR ENDORSER OF THIS PROMISSORY NOTE HEREBY WAIVE PRESENTMENT FOR PAYMENT, DEMAND, PROTEST, NOTICE OF PROTEST AND NOTICE OF DISHONOR HEREOF, AND FURTHER HEREBY WAIVE ALL BENEFIT OF VALUATION, APPRAISEMENT AND EXEMPTION LAWS AND DO HEREBY DESIGNATE AND APPOINT EDWIN M. BAUM ESQ., AND C-A CREDIT CORP., BOTH OF NEW YORK, OR EITHER OF THEM, AS EACH OF SAID PARTIES TRUE AND LAWFUL ATTORNEY-IN-FACT AND AGENT FOR EACH OF SAID PARTIES AND IN EACH OF SAID PARTIES NAME, PLACE AND STEAD TO ACCEPT SERVICE OF ANY PROCESS WITHIN THE STATE OF NEW YORK, HOLDER AGREEING TO NOTIFY EACH OF SAID PARTIES, AT THE LAST ADDRESS KNOWN TO HOLDER FOR EACH, BY CERTIFIED MAIL, WITHIN THREE DAYS OF SUCH SERVICE HAVING BEEN EFFECTED. EACH OF SAID PARTIES AGREE TO THE EXCLUSIVE VENUE AND JURISDICTION OF ANY COURT IN THE STATE AND COUNTY OF NEW YORK REGARDING ANY MATTER ARISING HEREUNDER WITH THE SOLE EXCEPTIONS THAT AN ACTION TO RECOVER POSSESSION OF ANY ASSETS OF THE MAKER OR ANY GUARANTOR OR ENDORSER, HOWEVER DENOMINATED, MAY, IN THE SOLE DISCRETION OF HOLDER, BE BROUGHT IN A STATE OR FEDERAL COURT HAVING JURISDICTION OVER SUCH ASSETS, AND THAT JUDGMENTS MAY BE CONFESSED, ENTERED, OR ENFORCED IN ANY JURISDICTION WHERE THE MAKER OR ANY GUARANTOR OR ENDORSER OR SUCH ASSETS MAY BE LOCATED. THE MAKER AND ANY GUARANTOR OR ENDORSER FURTHER WAIVE ANY RIGHT THEY, OR ANY OF THEM, MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT IN ACCORDANCE HEREWITH.** The Maker and any Guarantor or Endorser further agree that the validity, enforceability and effectiveness of each provision hereof and the obligations, rights and remedies of each of them in any way relating to or arising under this Promissory Note shall be governed and construed in accordance with the laws of the State of New York (excluding its choice of law rules). Maker and any Guarantor or Endorser hereby irrevocably authorize any attorney of any court of record to appear for and confess judgment against such Maker, Guarantor or Endorser (except in any jurisdiction where such action is not permitted by law) for all sums due hereunder to Holder, including expenses and 20% added for attorneys' fees, without stay of execution. The Holder may extend the time of payment of this Promissory Note, postpone the enforcement hereof, grant any other indulgence and add or release any party primarily or secondarily liable hereon without affecting or diminishing the Holder's right of recourse against the Maker or any Guarantor or Endorser of this Promissory Note, which right is hereby expressly reserved.

Co-Maker ______________________

______________________
(Witness for Maker and Co-Maker)

JONES EQUIPMENT, INC. (SEAL)

By: [signature] (Authorized Signature)

PN(1-98).FLT NET 9.05

Exhibit E

# SCHEDULE "A"

**This schedule is attached to and becomes part of Promissory Note with Security Agreement, or Security Agreement, Conditional Sale Contract, Lease, or ______________ dated MARCH 19, 1999 between the undersigned.**

| QUANTITY | DESCRIPTION OF PROPERTY (Indicate Whether "NEW"or"USED") | Year & Model | | Serial No. |
|---|---|---|---|---|
| 1 | TIMBERJACK SKIDDER | 1995 | 450C | CE4824 |
| 1 | CATERPILLAR DOZER | 1971 | D8 | D46A24858 |
| 1 | TIMBERJACK WITH 762B HARVESTOR HEAD S/N: 00126 | 1994 | 2618 | CB9486 |
| 1 | CASE CRAWLER | 1999 | 9007B | DAC0072 |
| 1 | HOOD LOG LOADER | 1994 | 2400 | 243826 |
| 1 | CASE CRAWLER | 1999 | 9030B | DAC0302886 |
| | COMPLETE WITH ALL ATTACHMENTS AND ACCESSORIES. | | | |

**The security interest created by this security agreement, insofar as it relates to the above described property, is a Purchase Money Security Interest with the proceeds hereof being used by Mortgagor to acquire the above described property.**

**All of the terms and provisions of the aforesaid Security Agreement are ratified, affirmed and incorporated herein by this reference.**

**This schedule is hereby verified correct and undersigned Mortgagor(s), Buyer(s), Maker(s) or Lessee(s) acknowledges receipt of a copy this** 20 **day of** Nov. , 00 .

**Mortgagee/Seller/Lessor/Holder:**

ORIX FINANCIAL SERVICES, INC.
F/K/A ORIX CREDIT ALLIANCE, INC.

By: ______________________________

**Mortgagor/Buyer/Lessee/Maker:**

JONES EQUIPMENT, INC.

By: X William L Jones

SCHED.A(1-98)

NET 9.05

**Exhibit F**

GUARANTY

CREDIT ALLIANCE CORPORATION
AND/OR
LEASING SERVICE CORPORATION
AND/OR
CREDIT AMERICA CORPORATION
NEW YORK, NEW YORK

RE: JONES EQUIPMENT, INC.

Gentlemen:

To induce you to enter into one or more equipment lease agreements and/or one or more security agreements, including but not limited to conditional sale agreements, leases, chattel and/or real estate mortgages, notes or other deferred or time payment paper, and/or any and all agreements relating to the purchase of such paper or documents or both (all of the foregoing hereinafter called "Security Obligations") with the above-captioned (hereinafter called the "Subject"), and/or to induce you to purchase and/or accept an assignment of Security Obligations from Subject and/or to induce you to purchase and/or accept one or more assignments from any party or parties of one or more Security Obligations having Subject as obligor thereon, and/or in consideration of your having heretofore done any or all of the foregoing, we, the undersigned (and each of us if more than one) agree to be, without deduction by reason of set-off, defense or counterclaim of Subject, jointly, severally, directly and unconditionally liable to you for the due performance of all such Security Obligations both present and future, and any and all subsequent renewals, continuations, modifications, supplements and amendments thereof, and for the payment of any and all debts of Subject of whatever nature, whether matured or unmatured, whether absolute or contingent and whether now or hereafter existing or arising or contracted or incurred or owing to or acquired by you by assignment, transfer or otherwise. Any and all present and future debts and obligations of Subject to us are hereby waived and postponed in favor of and subordinated to the full payment and performance of all present and future debts and obligations of Subject to you. We affirmatively represent and warrant to you that we will not transfer any personal assets to any party without full and valuable consideration for said transfer and we understand that in reliance upon and in consideration of this representation, specific credit accomodations as described above are being extended to the Subject by you. We hereby waive notice of acceptance hereof and of all notices of any kind to which we may be entitled, including without limitation any and all demands of payment, notices of non-payment, protest and dishonor to us or Subject or makers, or endorsers of any notes or other instruments for which we are or may be liable hereunder. You shall be entitled to hold any and all sums to our credit and any of our property at any time in your possession as security for any and all of our obligations to you, no matter how or when arising and whether under this instrument or otherwise. We further waive notice of and hereby consent to any agreement or arrangements whatever with Subject or anyone else, including without limitation, agreements and arrangements for payment extension, subordination, composition, arrangement, discharge or release of the whole or any part of the Security Obligations, or for releases of collateral and/or other guarantors, or for the change or surrender of any and all security, or for compromise, whether by way of acceptance of part payment or of returns of merchandise or of dividends or in any other way whatsoever, and the same shall in no way impair our liability hereunder. The liability hereunder of each of the undersigned is direct and unconditional and may be enforced without requiring you first to resort to any other right, remedy or security and shall survive any repossession of property whether or not such constitutes an election of remedies against Subject; nothing shall discharge or satisfy our liability hereunder except the full performance and payment of all Security Obligations with interest. We shall have no right of subrogation, reimbursement or indemnity whatsoever and no right of recourse to or with respect to any assets or property of Subject or to any collateral for Security Obligations, unless and until all Security Obligations shall have been paid and performed in full. As part of the consideration for your entering into and/or purchasing and/or accepting an assignment of one or more Security Obligations with Subject as obligor thereon, we hereby designate and appoint Stuart B. Glover, Esq., New York, New York, and C-A Credit Corp., New York, New York, or either of them, as our true and lawful attorney-in-fact and agent for each of us and in our name, place and stead to accept service of any process within the State of New York, you agreeing to notify us by depositing in the United States mails, certified mail, postage prepaid, written notice of such service addressed to us at our address shown hereinbelow, within three (3) days of such service having been effected and the undersigned do hereby agree to the venue and jurisdiction of any court in the State and County of New York regarding any matter arising hereunder. We hereby irrevocably authorize any attorney of any court of record to appear for and confess judgment against any one or more of us (except in any jurisdiction where such action is not permitted by law) for all unpaid balances and other monies due to you from Subject, plus expenses and 20% added for attorneys' fees, without stay or execution, and we hereby waive and release relief from any and all appraisement, stay or exemption laws then in force. We agree that if we or Subject shall at any time become insolvent, or make a general assignment, or if a petition in bankruptcy or any insolvency or reorganization proceeding shall be commenced by, against or in respect of us or Subject, any and all of our obligations shall, at your sole option, forthwith become due and payable without notice. This instrument is a continuing guaranty and shall continue in full force and effect, notwithstanding the death of any of us, until the full performance, payment and discharge of all Security Obligations, and thereafter until actual receipt by you from us of written notice of termination; such termination shall be applicable only to transactions having their inception thereafter. Termination by one or more of us shall not affect the liability of such of us as do not give such notice of termination.

The words "you" and "your" as used herein shall mean and include and this instrument shall apply in favor of and be severally enforceable by any addressee hereinabove named and/or any concern which is or may at any time be the parent, subsidiary of such parent, subsidiary or assignee thereof. We hereby waive any and all right to a trial by jury in any action or proceeding based hereon. This instrument cannot be changed orally, shall be interpreted according to the laws of the State of New York, shall be binding upon the heirs, executors, administrators, successors and assigns of each of the undersigned and shall enure to the benefit of your successors and assigns.

Dated: March 14, 1988

WITNESS: [signature]

[signature] (L.S.)
(Personal Guarantor's Signature) Bonnie L. Jones
Address: P.O. Box 326
Lolo, MT 59847

WITNESS: ____________________

____________________ (L.S.)
(Personal Guarantor's Signature)
Address: ____________________

ATTEST:

(Seal) ____________________ Secretary

____________________ Corporate Guarantor
By: ____________________ President

ATTEST:

(Seal) ____________________ Secretary

____________________ Corporate Guarantor
By: ____________________ President

CA-G-7

**Exhibit G**

ORIX FINANCIAL SERVICES, INC. F/'

# GUARANTY

**TO: ORIX CREDIT ALLIANCE , INC.**

**RE:** JONES EQUIPMENT, INC.

Gentlemen:

To induce you to enter into one or more equipment lease agreements and/or one or more security agreements, including but not limited to conditional sale agreements, leases, chattel and/or real estate mortgages, notes or other deferred or time payment paper, and/or any and all agreements relating to the purchase of such paper or documents or both (all of the foregoing hereinafter called "Security Obligations") with the above-captioned (hereinafter, together with its successors and assigns, called the "Subject"), and/or to induce you to purchase and/or accept an assignment of Security Obligations from Subject and/or to induce you to purchase and/or accept one or more assignments from any party or parties of one or more Security Obligations having Subject as obligor thereon, and/or in consideration of your having heretofore done any or all of the foregoing, we, the undersigned (and each of us if more than one) agree to be, without deduction by reason of set-off, defense or counterclaim of Subject and /or us, jointly, severally, directly and unconditionally liable to you for the due performance of all such Security Obligations past, present and future, and any and all subsequent renewals, continuations, modifications, supplements and amendments thereof, and for the payment of any and all debts and other obligations of Subject of whatever nature, whether matured or unmatured, whether absolute or contingent and whether now or hereafter existing or arising or contracted or incurred or owing to or acquired by you by assignment, transfer or otherwise (such debts and other obligations referred to herein as "General Obligations"). Any and all present and future debts and obligations of Subject to us are hereby waived and postponed in favor of and subordinated to the full payment and performance of all past, present and future debts and obligations of Subject to you. We affirmatively represent and warrant to you that we will not transfer any personal assets to any party without full and valuable consideration in money's worth for said transfer and we understand that in reliance upon and in consideration of this representation, specific credit accommodations as described above are being extended to the Subject by you. We hereby waive notice of acceptance hereof and of all notices of any kind to which we may be entitled, including without limitation any and all demands of payment, notices of non-payment, protest and dishonor to us or Subject or makers, or endorsers of any notes or other instruments for which we are or may be liable hereunder. You shall be entitled to hold any and all sums to our credit and any of our property at any time in your possession as security for any and all of our obligations to you, no matter how or when arising and whether under this instrument or otherwise. We further waive notice of and hereby consent to any agreement or arrangements whatever with Subject or anyone else, including without limitation, agreements and arrangements for payment extension, subordination, composition, arrangement, discharge or release of the whole or any part of Security Obligations, or for releases of collateral and/or other guarantors, or for the change or surrender of any and all security, or for compromise, whether by way of acceptance of part payment or of returns of merchandise or of dividends or in any other way whatsoever, and the same shall in no way impair our liability hereunder. The liability hereunder of each of the undersigned is direct and unconditional and may be enforced without requiring you first to resort to any other right, remedy or security and shall survive any repossession of property whether or not such constitutes an election of remedies against Subject; nothing shall discharge or satisfy our liability hereunder except the full performance and payment of all Security Obligations and General Obligations with interest. We shall have no right of subrogation, reimbursement or indemnity whatsoever and no right of recourse to or with respect to any assets or property of Subject or to any collateral for Security Obligations, unless and until all Security Obligations and General Obligations shall have been paid and performed in full and if the undersigned shall be deemed to be an "insider", (as the term is used in Bankruptcy Code) then all rights of subrogation are waived. If you become involved in any lawsuit against any of us or concerning a breach of any covenant or agreement herein contained, we shall be obligated to pay to you, and you may obtain judgment for, (a) all unpaid balances and any other monies due to you from Subject; (b) all costs and expenses of any such suit; (c) 20% of the sum of (a) plus (b), representing attorneys' fees (which sum is deemed to be reasonable), plus (d) interest on (a), (b) and (c) at the highest lawful rate provided for in any of the Security Obligations until such sum is paid in full (the sum of (a), (b), (c) and (d) called "the Judgment Amount"). **As part of the consideration for your entering into and/or purchasing and/or accepting an assignment of one or more Security Obligations with Subject as obligor thereon, we hereby designate and appoint Edwin M. Baum, Esq. and C-A Credit Corp., both of New York, or either of them, as our true and lawful attorney-in-fact and agent for each of us and in our name, place and stead to accept service of any process within the State of New York, you agreeing to notify us by depositing in the United States mails, certified mail, postage prepaid, written notice of such service addressed to us at our address shown hereinbelow, within three (3) days of such service having been effected and the undersigned do hereby agree to the exclusive venue and jurisdiction of any State or Federal court in the State and County of New York regarding any matter arising hereunder.** We hereby irrevocably authorize any attorney of any court of record to appear for and confess judgment against any one or more of us (except in any jurisdiction where such action is not permitted by law) for the Judgment Amount, without stay of execution, and we hereby waive and release relief from any and all appraisement, stay or exemption laws then in force. We agree that if we or Subject shall at any time become insolvent, or make a general assignment, or if a petition in bankruptcy or any insolvency or reorganization proceeding shall be commenced by, against or in respect of us or Subject, any and all of our obligations shall, at your sole option, forthwith become due and payable without notice. You may appropriate and apply to any of our obligations any and all balances, sums, property, credits, deposits, accounts, reserves, collections, monies, drafts, notes or checks coming into your possession and belonging to us and endorse our name thereon for deposit, negotiation, discount or collection. We have not relied upon any representations or warranties in connection with the execution and delivery of this instrument and our obligations hereunder are absolute and unconditional notwithstanding the invalidity or unenforceability of any of the Security Obligations or General Obligations or of this instrument. This instrument is a continuing guaranty and shall continue in full force and effect, notwithstanding the death of any of us, until the full performance, payment and discharge of all Security Obligations and General Obligations, and thereafter until actual receipt by you from us of written notice of termination; such termination shall be applicable only to transactions having their inception thereafter. Termination by one or more of us shall not affect the liability of such of us as do not give such notice of termination.

No representations and/or agreements not set forth herein have been made to us. We hereby assert and confirm that we executed and entered into this instrument voluntarily and without any coercion, duress or undue influence of any kind, whether directly or indirectly, having been exerted upon us by you or any of your employees, agents or representatives. **In further consideration for your entering into any of the Security Obligations and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the undersigned, individually and for his or her heirs, executors, administrators, personal representatives, successors and assigns, does hereby waive, forego and agree not to assert any and all rights, claims and defenses, if any, under the Federal Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §1691 et seq. and Regulations promulgated thereunder, that may inure to the benefit of the undersigned as a result of your obtaining or our executing this instrument. We hereby ratify and approve the obtaining by you of credit reports relating to us and hereby agree that you may hereafter obtain such credit reports as you may, in your sole discretion, determine.**

The words "you" and "your" as used herein shall mean and include and this instrument shall apply in favor of and be severally enforceable by any addressee hereinabove named and/or any concern which is or may at any time be the parent, subsidiary of such parent, subsidiary or assignee thereof. **We knowingly, voluntarily and intentionally waive any and all right to a trial by jury of any and all claims, defenses, counterclaims, crossclaims and setoff or recoupment claims arising either directly or indirectly between you and us and/or involving any person or entity claiming any rights acquired by, through or under any of the Security Obligations or General Obligations and we further waive any and all right to claim or recover any punitive or consequential damages or any other damages other than or in addition to, actual damages.** This instrument cannot be changed orally, shall be interpreted according to the laws of the State of New York, (excluding its choice of law rules), shall be binding upon the heirs, executors, administrators, successors and assigns of each of the undersigned and shall inure to the benefit of your successors and assigns.

Dated: 11-20-00

WITNESS: ____________________

Driver Lic# ____________________ St. ____

WILLIAM L. JONES
X William L Jones (L.S.)
(Personal Guarantor's Signature)
Address: P.O. BOX 326
LOLO MONTANA 59847

Driver Lic.# X E10 8 WIL0 St. mt

Individual Acknowledgment
State of
County of } ss.

I, Brenda A Evans, a Notary Public duly qualified in and for said County and State, do hereby certify that on this 20 day of November, 2000 in (place) Missoula, MT in said County, before me personally appeared: WILLIAM L. JONES to me personally well known as and to be the identical person(s) named and described in and party to and who executed in his/her/their own proper handwriting and whose name(s) is / are subscribed to the instrument of writing appearing on the above, bearing date as herein indicated, and produced and delivered the same before me and who, upon being first duly sworn by me, stated that he/she/they know the contents of said instrument to be his/her/their own free, lawful and voluntary act and deed for the uses, purposes and consideration therein mentioned and contained.

Given under and witness my hand and official seal the day and year in this certificate first above written.

Brenda A Evans
Notary Public
My Commission Expires: 2-05-02